# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID GERMANORO,** | **CIVIL ACTION** |
| Petitioner, | |
| v. | **NO. 21-4863-KSM** |
| **BARRY SMITH, et al.,** | |
| Respondents. | |

## MEMORANDUM

**MARSTON, J.**                                                                                     **July 18, 2023**

Petitioner David Germanoro, who is currently confined at SCI-Houtzdale, was convicted of first-degree murder, abuse of a corpse, possessing an instrument of a crime, and related offenses following a non-jury trial in January 1997.  *Commonwealth v. Germanoro*, No. 1386 EDA 2001, at 3 (Pa. Super. Ct. April 11, 2002) ("*Germanoro*").[1]  He was sentenced to life imprisonment for the first degree murder charges and various sentences of imprisonment on the other charges, all to run consecutively.  *Id.*  He now requests habeas corpus relief pursuant to 28 U.S.C. § 2254(d).  (*See* Doc. Nos. 1, 4.)  The Court referred his petition to the Honorable Carol Sandra Moore Wells, United States Magistrate Judge, for a Report and Recommendation ("R&R").  (Doc. No. 9.)  On December 7, 2022, Judge Wells entered an R&R recommending that the Court dismiss Germanoro's petition as time barred.  (Doc. No. 19.)  Germanoro objects to the R&R.  (Doc. No. 20.)  For the reasons discussed below, his objections are overruled.  The

---

[1] The Commonwealth attached a copy of the *Germanoro* opinion to its response brief.  (*See* Doc. No. 17-1.)

Court finds no error in Judge Wells's findings and conclusions and adopts the R&R in its entirety.

## I. BACKGROUND

### A. *Conviction and Sentence*

The Pennsylvania Superior Court provides a succinct description of the underlying conduct, Germanoro's conviction, and his sentence in its opinion affirming the denial of collateral relief under the Pennsylvania Post Conviction Relief Act ("PCRA"):

> On February 22, 1996, [Germanoro] was smoking marijuana with the victim, Steven Jones, and the victim's girlfriend, Celeste Mulhern, and two other friends, Caesar Rodriguez and Michael Diemer, at Ms. Mulhern's dwelling. An argument between [Germanoro] and the victim occurred, which resulted in the two of them being asked to leave. They left the house separately, and [Germanoro] continued to go home taking Diemer and Rodriguez with him while the victim left by himself. [At some point, Germanoro] determined that Diemer and Rodriguez were only going with him so that they could steal his drugs, so he made them get out of the car and proceeded on alone. A short time later, Mulhern called [Germanoro to] see if he arrived home safely. [Germanoro] answered on speaker phone and Mulhern heard the victim's voice in the background. The victim never returned home.
>
> The Philadelphia Police Department and the Delaware County Criminal Investigation Division ["CID"], following up on a missing person's report, both questioned [Germanoro], who at the time denied any knowledge concerning the whereabouts of the victim. A search warrant was obtained, and when the police searched [Germanoro's] house, they found substantial amounts of blood which were later shown by laboratory tests to have been the blood of the victim.
>
> [Germanoro] was arrested for the murder of the victim and made a statement to the police in which he admitted killing the victim but claimed that he acted in self-defense. [Germanoro] disclosed the location of the body, which was later found decapitated in the trunk of [Germanoro's] parked car near a junkyard. [Germanoro] also told the police that he used an ice pick, a survival knife, and a bowie knife to kill the victim and alleged that the victim, who was stabbed with the various knives over thirty-five times, incredibly did not stop coming after him until he was stabbed in the neck. [Germanoro]

> told the police that he had burned most of the blood- stained clothes and a substantial portion of the blood-stained sofa. [Germanoro] admitted that he had not decapitated the body until twelve hours after the victim's death.
>
> [Germanoro] was charged with first-degree murder, abuse of corpse, possessing an instrument of a crime, and related offenses arising from the stabbing and decapitation of the victim. Mark Much, Esquire, and Mary Welch, Esquire, were appointed to represent [Germanoro] at trial. Prior to trial, [Germanoro] waived his right to trial by jury as part of an agreement by the Commonwealth not to pursue the death penalty. The non-jury trial began on January 13, 1997, and [Germanoro] was found guilty of all charges. [Germanoro] was sentenced on March 10, 1997, to life imprisonment for first-degree murder, nine to twenty-four months for abuse of corpse, and six to sixty months imprisonment for possession of an instrument of a crime, the sentences to run consecutively.

*Germanoro*, at 1–3.

### B. Direct Appeal

Following his conviction and sentence, Germanoro filed post sentence motions with the trial court, which were denied. *Id.* at 3. Germanoro then filed a direct appeal to the Pennsylvania Superior Court, and that court affirmed his conviction and sentence. *Id.* On November 30, 1998, the Pennsylvania Supreme Court denied his petition to appeal the Superior Court's decision. *Id.*

### C. PCRA Petition

Having exhausted his direct appeals, Germanoro filed a petition for relief under Pennsylvania's PCRA and was appointed new counsel. *Id.* Following an evidentiary hearing, the trial court denied his petition. *Id.* Germanoro appealed to the Pennsylvania Superior Court, which affirmed the lower court's ruling in a written memorandum on April 11, 2002. *Id.* at 10. He did not seek leave to appeal with the Pennsylvania Supreme Court.

### D.      § 2254 Petition

Almost twenty year later, on November 3, 2021, Germanoro filed his pro se petition in this action, which seeks habeas relief pursuant to 28 U.S.C. § 2254.  (*See* Doc. No. 1.)  At the direction of the Court, he filed an amended petition using the Court's form.  (*See* Doc. No. 4.)  Viewing the two documents together, the Court gleans four alleged grounds for relief identified by Germanoro:  (1) the Commonwealth breached a plea agreement that police officers entered with Germanoro; (2) the evidence was insufficient to sustain Germanoro's conviction of first degree murder; (3) the transcript from Germanoro's trial was altered; and (4) Germanoro's trial counsel rendered ineffective assistance when they failed to argue pertinent facts at trial.

On December 7, 2022, Judge Wells entered an R&R, recommending dismissal of Germanoro's claims as time barred.  (Doc. No. 19 at 3.)  Germanoro objects to the R&R, arguing that he can bring this § 2254 petition out of time because he has newly discovered evidence:

> This Petition was filed in light of celebrity Bill Cosby's conviction dismissal.  This is newly discovered.  Petitioner was told by Delaware County CID Detectives to tell them what happened and he would see the streets again.  CID Detectives are agents of the District Attorney's Office.  That agreement must be honored, as was the case of Celebrity Bill Cosby.  This is newly discovered evidence.

(Doc. No. 20 at 1.)  He also argues that the Court should reject Judge Wells's R&R because "a civilized society will not tolerate a wrongfully incarcerated individual (Petitioner) to serve in prison simply because he missed a deadline (time-barred)."  (*Id.*)[2]

## II.     STANDARD OF REVIEW

"In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation."  *Piasecki v. Ct. of Common*

---

[2] Germanoro also reiterates the substantive grounds for his petition, arguing that the evidence presented at trial did not support his murder conviction.  (Doc. No. 20 at 1.)  Because the Court agrees with Judge Wells that Germanoro's claims are untimely, we do not reach this issue.

4

*Pleas*, No. 14-cv-7004, 2021 WL 1105338, at *3 (E.D. Pa. Mar. 23, 2021). Under that Rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." *Id.* (quoting *Savior v. Superintendent of Huntingdon SCI*, No. 11-cv-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012)).

When a party objects to a magistrate judge's findings, the district court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673 (1980). "Ultimate adjudicatory power" resides with the district court "after receiving assistance from and the recommendation of the magistrate." *Raddatz*, 447 U.S. at 692. And after reviewing the magistrate judge's conclusions, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations" and "receive further evidence, or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673–74.

### III. DISCUSSION

Germanoro argues that Judge Wells erred when she found his claims time barred because (1) newly discovered evidence (i.e., the dismissal of the charges against Bill Cosby) allows him to bring his claims now; and (2) the time bar doctrine is counter to the principles that underly a "civilized society." (Doc. No. 20 at 1.) The Court addresses each argument in turn.

#### A. *Newly Discovered Evidence*

Germanoro's habeas petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which sets a one-year statute of limitations period for petitioners seeking federal habeas relief. Generally, the limitations period begins on the date that the judgment of the state court became final. 28 U.S.C. §2244(d)(1)(A) (setting the relevant

5

period as one year after "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review").  However, if the petition alleges newly discovered evidence, the filing deadline is instead one year from "the date on which the factual predicate of the claim . . . could have been discovered through . . . due diligence."  *Id.* §2244(d)(1)(D).  Germanoro argues that Bill Cosby's 2021 "conviction dismissal" in *Commonwealth v. Cosby* is "newly discovered evidence" for purposes of § 2244(d)(1)(D).  The Court disagrees.

In *Commonwealth v. Cosby*, the district attorney initially assigned to Cosby's case publicly announced his decision not to prosecute Cosby in a signed press release. *Commonwealth v. Cosby*, 252 A.3d 1092, 1136–37 (Pa. 2021) (explaining that the attorney testified that he did so "because he believed "that the case was saddled with deficiencies such that proving Cosby's guilt beyond a reasonable doubt was unlikely").  Relying on that press release, and the district attorney's unequivocal statements that Cosby would not be prosecuted, Cosby believed he could no longer invoke his Fifth Amendment rights in a parallel civil case and testified in four depositions to his detriment.  *Id.* at 1138–40 ("Cosby could not invoke that which he no longer possessed, given the Commonwealth's assurances that he faced no risk of prosecution.").  Years later, a new district attorney reversed course and secured a conviction against Cosby, relying on his civil deposition testimony to do so.  *Id.* at 1100.  On appeal, the Pennsylvania Supreme Court vacated the conviction, finding that "[i]n light of the[ ] circumstances" surrounding Cosby's case, "the subsequent decision by successor [district attorneys] to prosecute Cosby violated [his] due process rights."  *Id.* at 1143.  The court held that "when a prosecutor makes an unconditional promise of non-prosecution, and when the defendant

6

relies upon that guarantee to [their] detriment . . . , the principle of fundamental fairness . . . demands that the promise be enforced." *Id.* at 1131.

Germanoro argues that *Commonwealth v. Cosby* compels habeas relief in his case because in May 1996, CID officers promised him that he would "see the streets again" if he cooperated with them, and the statement he gave after this promise was ultimately used against him at trial. (Doc. No. 1 at 1; Doc. No. 20 at 1.) Germanoro also argues that this habeas claim is timely under § 2244(d)(1)(D) because the *Cosby* opinion is "newly discovered evidence." The Court disagrees.

As mentioned above, under § 2244(d)(1)(D), the filing deadline is one year from "the date on which the factual predicate of the claim . . . could have been discovered through . . . due diligence." . Although AEDPA does not define "factual predicate," the Third Circuit has held that § 2244(d)(1)(D) provides a petitioner with a later accrual date "only if vital facts could not have been known" earlier. *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004); *see also McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007) ("[T]he 'factual predicate' of a petitioner's claims constitutes the 'vital facts' underlying those claims."). The decision in *Commonwealth v. Cosby*, is not a "vital fact" underlying Germanoro's claim for habeas relief— indeed, the Pennsylvania Supreme Court's opinion is not a *fact* at all. *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000) ("Preston cannot take advantage of 28 U.S.C. § 2244(d)(1)(D) . . . . Preston was clearly aware of both his administrative punishment and his subsequent criminal prosecution years before he filed his state petition. Nothing in [the two state supreme court decisions cited by Preston] alerted Preston to any *factual* basis for his claim."). Instead, the *Cosby* opinion is what alerted Germanoro to the legal significance of the CID agent's 1996 statement that Germanoro would "see the streets" again if he cooperated.

7

But a petitioner's delayed awareness of the legal significance of vital facts is not a ground for invoking §2244(d)(1)(D). *See, e.g.*, *Tyler v. Superintendent Houtzdale SCI*, C.A. No. 17–1410, 2017 WL 3662470, at *1 (3d Cir. May 2, 2017) ("[T]he trigger for § 2244(d)(1)(D) is discovery of a claim's factual predicate, not recognition of the facts' legal significance."); *Henry v. Smith*, No. CV 16-5010, 2017 WL 2957819, at *7 (E.D. Pa. July 10, 2017). For example, in *Henry v. Smith*, the petitioner argued that he was entitled to tolling under §2244(d)(1)(D) because he "did not learn of the 'facts' of the constitutional and jurisdictional errors . . . [of his] criminal proceedings" until after a fellow inmate reviewed his records. 2017 WL 2957819, at *7. In rejecting this argument, the district court explained that there is a "distinction between the delayed awareness of vital facts (which will delay accrual [under § 2244(d)(1)(D)]) and delayed awareness of the legal significance of those facts (which will not)." *Id*. (quoting *Chang-Cruz v. Hendricks*, No. CIV. 12-7167, 2013 WL 5966420, at *3 (D.N.J. Nov. 7, 2013)). Like the petitioner in *Henry*, Germanoro alleges, at most, a "lack of knowledge of the legal basis for [his] claim." *Id*. Germanoro claims that he did not know the legal significance of the CID agent's statement until after hearing the court's decision in *Cosby*. (Doc. No. 20 at 1.) This is not grounds for invoking §2244(d)(1)(D).

Germanoro also states that he discussed the CID agent's "agreement" with his trial attorney, who decided "not [to] proceed to argue this issue" in court. (Doc. No. 4 at 10.) Even if the Court interprets this assertion as an argument that Germanoro's attorney failed to comprehend the legal significance of Germanoro's alleged agreement with investigators, that also does not constitute grounds for invoking §2244(d)(1)(D). *See Rick v. Harpstead,* 564 F. Supp. 3d 771, 781 (D. Minn. 2021) (holding that an attorney's lack of understanding of "the

8

legal significance of . . . evidence" is not grounds for invoking AEDPA's statute of limitations under §2244(d)(1)(D)).

Moreover, Germanoro's conversation with his trial attorney suggests that he knew the "vital fact" underlying his habeas claim *and* its potential legal significance years ago, or at the very least, could have discovered them "through the exercise of due diligence." *See Schlueter*, 384 F.3d at 74 (Under §2244(d)(1)(D), "the one-year period of limitation commences when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered."); *see also Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 285 (3d Cir. 2021) ("AEDPA does not impose a one-size-fits-all requirement. Rather, what due diligence requires depends on the circumstances of each petitioner: who he is, what facts he knows, what claim he seeks to bring, and what he can reasonably expect in view of his circumstances and the nature of that particular claim."). Here, Germanoro knew the factual predicate of his claim before he went to trial. Not only did Germanoro have the conversation with the CID agent which resulted in the alleged "agreement" in 1996, but he "believed then" that due to this agreement "[he] should have never been charged with first degree murder." (Doc. No. 1 at 1.) Germanoro even admits that he spoke to his attorney about this "agreement," but his attorney said, "the court would call it good police work," and the attorney "did not proceed to argue this issue." (Doc. No. 4 at 10.)

Because the decision in *Cosby* is not a "factual predicate" of Germanoro's habeas claim, and Germanoro knew the vital fact underlying his claim long before that opinion was published, Germanoro is not entitled to § 2244(d)(1)(D)'s alternate limitations period. Accordingly, his claims are governed by § 2244(d)(1)(A), and he was required to bring his federal habeas claims

9

within one year of "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review."

### B. *Statutory and Equitable Tolling*

There are exceptions to the § 2244(d)(1)(A)'s one year limitations period—statutory tolling and equitable tolling. Germanoro does not object to Judge Wells's tolling determinations, including Judge Wells's conclusion that, when tolling is considered, Germanoro's one year statute of limitations period expired on August 21, 2002. This Court finds Judge Wells did not err and it adopts these portions of her R&R.

### C. *Civilized Society*

Finally, the Court rejects Germanoro's argument that the time bar doctrine is counter to the ideals of "civilized society." As the Supreme Court noted almost 80 years ago, "[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944); *see also Coleman v. Thompson*, 501 U.S. 722, 751 (1991) (quoting *Yakus* in the habeas context).

## IV. CONCLUSION

The Court finds no error in Judge Wells's conclusions, and accordingly, overrules Germanoro's objections and adopts the R&R in its entirety. Germanoro's petition is denied as time barred. An appropriate order follows.